IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:15-HC-2051-D

| | |
|---|---|
| SALVADOR ANTONIO DAMIAN, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| RIVERS PRISON, et al., ) | |
| ) | |
| Respondents. ) | |

On March 23, 2015, Salvador Antonio Damian ("Damian" or "petitioner"), a federal inmate proceeding pro se, filed a motion under 28 U.S.C. § 2241, or alternatively, under 28 U.S.C. § 1651 [D.E. 1]. The court now conducts its preliminary review under 28 U.S.C. § 2243 and dismisses the petition.

In March of 2003, the Federal Bureau of Investigation ("FBI") received information from cooperating sources concerning the activities of the Ignacio Coronel-Villareal drug trafficking organization, a group involved in smuggling illegal drugs from Mexico into the United States. After launching an investigation, the FBI determined that Damian, also known as "Don Chava," was a principal member of the organization in direct contact with Ignacio Coronel-Villareal.

On March 19, 2003, a man who later became a cooperating defendant delivered a duffel bag containing 79 pounds of d-methamphetamine, commonly referred to as "ice," to an undercover FBI agent in El Paso, Texas. After his arrest, the cooperating defendant and another individual told the agent that Damian owned the "ice."

At the time of his arrest, the cooperating defendant had in his possession cellular telephones, a global positioning system, address books, and pay-and-owe sheets that cryptically detailed proposed drug transactions and payments between Damian and others. He claimed that Damian tutored him in the narcotic trafficking business, and that Damian would communicate arrangements for drug trades through telephone calls, email messages, and facsimile transmissions. The cooperating defendant also provided the FBI with Damian's email address. With this information, the FBI covertly monitored Damian's drug trafficking through telephone

calls and email exchanges.

> On December 17, 2003, based on information gathered by the FBI, a grand jury sitting in the Western District of Texas, El Paso Division, returned a two-count indictment charging Damian with conspiracy to possess with the intent to distribute five kilograms or more of cocaine and 500 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(a)(1), 841(b)(1)(A)(ii), and 841(b)(A)(viii) ("count one"), and conspiracy to import 500 grams or more of cocaine and fifty grams or more of methamphetamine, in violation of Title 21 U.S.C. §§ 952(a), 960(a)(1), 960(b)(2)(B), and 960(b)(2)(H) ("count two").
>
> Mexican law enforcement authorities arrested Damian in Mexico City, Mexico, on July 30, 2005. The Government of Mexico later agreed to extradite Damian to the United States. After his arrest in the United States on November 28, 2006, Damian provided a statement to FBI agents. According to the Government, however, his statement was neither complete nor truthful.
>
> Damian elected to forego trial and pleaded guilty, pursuant to a plea agreement, to count one of the indictment. Under the terms of the plea agreement, Damian substantially limited his appellate rights. The Court accepted Damian's plea and sentenced him to 240 months' imprisonment followed by five years' non-reporting supervised release, a $3,000 fine, and a $100.00 special assessment.
>
> Damian timely filed a notice of appeal. After reviewing the record, his appellate counsel filed an Anders brief and motion to withdraw as counsel. The Court of Appeals for the Fifth Circuit dismissed the appeal . . . .

Order Denying Section 2255 Motion at 1–3, United States v. Damian-Lopez, No. 3:03-CR-2338-DB-3 (W.D. Tex. Oct. 29, 2010), [D.E. 132] (footnotes omitted); see Order, Damian v. Tripp, No. 5:14-HC-2146-D (E.D.N.C. June 11, 2015), [D.E. 6].

Damian states that he is "a deportable alien who is not fighting his deportation" and "asks the Court to stay his incarceration beyond his 'Home Eligibility Date' as calculated by the BOP as part of his sentence calculation and instead deport him back to his home country." Pet. [D.E. 1] 1. Damian's projected release date is January 1, 2023. See BOP Inmate Locator, http://www.bop.gov/inmateloc/ (search by inmate number) (last visited August 15, 2015).

To the extent Damian seeks to commence deportation proceedings, this court lacks

2

jurisdiction to award him that relief. The Immigration and Nationality Act ("INA") provides in pertinent part:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g). Thus, the INA "grants the Attorney General exclusive jurisdiction over any decision to commence removal proceedings and expressly precludes federal court jurisdiction over any action implicating a decision of the Attorney General regarding commencement of removal proceedings." Chapinski v. Ziglar, 278 F.3d 718, 720 (7th Cir. 2002); see Reno v. Am.-Arab Anti-Discrimination Comm., 525 U.S. 471, 485 n.9 (1999); Duamutef v. INS, 386 F.3d 172, 180–81 (2d Cir. 2004); Campos v. INS, 62 F.3d 311, 313–14 (9th Cir. 1995). Moreover, "[a] determination of whether the petitioner may stipulate to removal proceedings before an Immigration Judge is within ICE's discretion and INA [section] 242(g) prohibits the district courts from reviewing this determination." Moncayo v. U.S. Immigration & Customs Enf't Agency, No. 08-60858, 2008 WL 5705733, at *2 (S.D. Fla. Nov. 26, 2008) (unpublished). "Thus, a prisoner cannot compel . . . ICE, by way of habeas corpus, mandamus or the [APA], to initiate a removal proceeding. . . . Whether the application is fashioned as a habeas action or a petition for mandamus under Section 1361, any prisoner's claim petitioning . . . ICE for a removal-related action prior to the completion of the prisoner's custodial sentence is unripe and subject to dismissal." Mejia-Gomez v. DHS/ICE, No. 1:05-cv-5000-JBS, 2006 WL 1098226, at *2 (D.N.J. Mar. 31, 2006) (unpublished) (citations omitted); see Amuah v. Napolitano, No. 5:10-HC-2107-FL, 2011 WL 3664711, at *1 (E.D.N.C. Aug. 18, 2011) (unpublished).

3

To the extent Damian asserts a "violation of equal protection" in his inability to obtain deportation before his release date under the Second Chance Act of 2007, his claim fails. See Aguilera v. Fed. Bureau of Prisons, No. 4:13CV513, 2013 WL 5676324, at *6 (N.D. Ohio Oct. 17, 2013) (unpublished) (collecting cases).

In sum, the court DISMISSES Damian's petition for a writ of habeas corpus under 28 U.S.C. § 2241 [D.E. 1]. The court DENIES a certificate of appealability. See 28 U.S.C. § 2253(c); Miller-El v. Cockrell, 537 U.S. 322, 336–38 (2003); Slack v. McDaniel, 529 U.S. 473, 484 (2000). The clerk shall close the case.

SO ORDERED. This 17 day of August 2015.

JAMES C. DEVER III
Chief United States District Judge

4